UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT A. METHVIN,<br>    *Plaintiff,*<br>    *v.*<br>EVAN COSSETTE,<br>    *Defendant.* | Civil No. 3:11cv959 (JBA)<br><br>October 22, 2013 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On August 1, 2012, Plaintiff Robert Methvin filed an Amended Complaint [Doc. # 67] against Defendant Evan Cossette, a Meriden, Connecticut police officer, in which he brings claims pursuant to 42 U.S.C. §§ 1983 and 1988 alleging a violation of his right to be free from excessive force and deliberate indifference to Plaintiff's serious medical needs as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.[1]  Defendant now moves [Doc. # 86] for summary judgment, arguing that judicial estoppel precludes the excessive force claim because Plaintiff pled guilty to interfering with police during his arrest.  Alternatively, Defendant argues that his behavior was objectively reasonable under the circumstances, and thus constitutionally permissible.  Finally, Defendant claims that he is entitled to qualified immunity.  For the reasons that follow, Defendant's motion for summary judgment is denied.

**I.    Facts**

On October 5, 2010, Plaintiff Robert Methvin was injured while being arrested for Breach of Peace and Interfering with Police.  (Cossette Report, Ex. A to Def.'s Loc. R. 56(a)1 Stmt. [Doc. # 86–2] at 1.)  Non-party Officer Cerejo arrived on the scene, followed by Defendant, after Plaintiff's wife Tammy Methvin called 911 because Plaintiff was

---

[1] At oral argument, Plaintiff's counsel represented that Plaintiff was withdrawing his deliberate indifference claim.

drunkenly shouting at her from outside their apartment. (Cerejo Report at 1; Tammy Methvin Dep. Tr., Ex. C to Def.'s 56(a)1 Stmt. at 86–88.) The responding officers were informed by the dispatcher that Plaintiff was reportedly hostile towards the police. (Police Video at 22:20:48.) Plaintiff is approximately six feet tall and at the time of his arrest he weighed 235 or 240 pounds, was wearing steel toed boots, and had consumed medically prescribed oxycodone and two to three beers. (Robert Methvin Dep. Tr., Ex. D. to Def.'s 56(a)1 Stmt. at 42–43, 59, 97; Cerejo Report, Ex. B to Def.'s 56(a)1 Stmt. at 1.)

When Officer Cerejo arrived, Plaintiff was yelling profanities in an agitated state on the sidewalk. (Cerejo Report at 1.) Plaintiff identified himself in response to Officer Cerejo's request but refused to follow commands to cease yelling and return to his house. (Cerejo Report at 2; Police Video, Ex. E to Def.'s 56(a)2 Stmt. at 22:16:40.) Officer Cerejo then twice ordered Plaintiff to turn around with his hands behind his back, warning him that otherwise he would be thrown on the ground. (Police Video at 22:16:55.) Plaintiff refused to turn around because he wanted to know the reason for the arrest. (Robert Methvin Dep. Tr. at 77.) Plaintiff claims that just prior to being brought down, he turned to put his wallet in his pocket and that the police may have misperceived the gesture. (*Id.* at 59.) Over a period of roughly forty seconds, Officer Cerejo and Defendant brought Plaintiff to the ground and handcuffed him. (Cerejo Report at 2; Police Video at 22:17:16 to 22:17:56.) The injuries Plaintiff sustained in this scuffle were in his neck and head area, including a black eye, a bloody nose, and a cut lip. (*See* Robert Methvin Dep. Tr. at 58, 111; *see also* Injury Photos, Ex. 5 to Pl.'s Loc. R. 56(a)2 Stmt. [Doc. # 90-1].)

The precise sequence of events during the altercation remains in dispute, as does the nature, timing, and purpose of the force Defendant acknowledges he used on Plaintiff. Defendant admits that he struck Plaintiff with his knee during the course of the arrest,

claiming that he kneed Plaintiff once while Plaintiff was still resisting arrest in order to properly secure Plaintiff in handcuffs. (*See* Robert Methvin Dep. Tr., at 77–78; Cossette Report at 2.) Plaintiff claims that he was either kneed or punched in the face (*see* Robert Methvin Dep. Tr. at 62–63), after he had stopped resisting arrest and was in the process of being handcuffed. As the two officers took Plaintiff to the ground, by Plaintiff's account, one of them threatened to break Plaintiff's neck or face (*see* Robert Methvin Dep. Tr. at 99), and Defendant's hands were bloodied as a result of the encounter (*see* George Aff., Ex. 9 to Pl.'s 56(a)2 Stmt. at 1). However, in the video recording of the incident, after the physical altercation, Defendant appears to tell medical personnel that Plaintiff was injured when Defendant "kneeled on him."[2] (Police Video at 22:34:00.) Plaintiff's expert claims that Defendant can clearly be heard on the audio recording telling Officer Cerejo that he "kneed [Plaintiff] in the face," in response to Officer Cerejo's question as to how Plaintiff was injured. (*See* Siena Report, Ex. 10 to Pl.'s 56(a)2 Stmt. at 10.) It is undisputed that no force was used on Plaintiff after the officers got up off the ground.[3] (Robert Methvin Dep. Tr. at 78–80.)

---

[2] Portions of the audio recording are difficult to make out, and Defendant does not concede that he made this statement.

[3] In Plaintiff's Local Rule 56(a)2 Statement, Plaintiff admits that no force was used after he was handcuffed. However, Plaintiff's answers at his deposition are ambiguous:

> Q: Is it true that no officer used any force against you after you were handcuffed?
> A: After I was handcuffed, no.
> Q: After you were handcuffed—
> A: And after they got up off of me when I was handcuffed.
> Q: But I want to clarify. After things calmed down, you were handcuffed, you're not claiming than any officer struck you or kicked you after you were handcuffed.
> A: I can't say that. After they got up off of me there was no contact, I believe.

(Robert Methvin Dep. Tr. at 80–81.)

Defendant called for medical assistance within two minutes of gaining control of Plaintiff. (Cossette Report at 2; Tammy Methvin Dep. Tr. at 81; Police Video at 22:19:03.) When the ambulance arrived, responding EMT Robert George states that a group of officers attempted to prevent him from taking Plaintiff to the hospital.[4] (Police Video at 22:31:49; George Aff. at 2–3.) Mr. George avers that when he informed the officers that Plaintiff needed immediate medical treatment, they responded that they would "rather take him to the police department." (George Aff. at 2.) He claims that the officers refused to sign a medical release, and only agreed to allow him to transport Plaintiff to the hospital when he "strengthened his position" and asked them if they wanted to "do the right thing." (*Id.* at 2–3.)

Ultimately, the ambulance transported Plaintiff to a hospital where he was treated for a laceration on his chin and received a CT scan, which did not show any internal bleeding. (Cossette Report at 2; Robert Methvin Dep. Tr. at 101; Midstate Medical Center Records, Ex. J to Def.'s 56(a)1 Stmt. at 6, 9.) On October 7, 2010, Plaintiff filed a complaint with the Meriden Police Department claiming that the arresting officers used excessive force. (Methvin Citizen's Complaint, Ex. 4 to Pl's 56(a)2 Stmt. at 1.) On October 9, 2010, Defendant wrote an incident report purporting to explain his use of force, stating that he "delivered one knee strike" to Plaintiff and "knelt on [Plaintiff's] upper shoulder" in order to handcuff Plaintiff as he continued to resist arrest. (Cossette Report at 2.) On October 18, 2010, Officer Cerejo also wrote a report describing the arrest, which states that the officers struggled to handcuff Plaintiff, but makes no mention of a knee strike by Officer Cossette. (Cerejo Report at 1.) On November 3, 2010, a state court accepted Plaintiff's guilty plea to Interfering with an Officer in violation of Conn.

---

[4] Defendant denies that the officers interfered with Plaintiff's medical treatment.

Gen. Stat. § 53a-167a, on the factual basis that "[o]n October 5 of 2010 in Meriden police received a complaint that the defendant was intoxicated and causing [a] disturbance. When they responded the defendant immediately directed his combative behavior both physically and verbally towards the police officers . . . ." (*State v. Methvin*, No. N07MCR10026071S, 11/3/10 ("Judicial Website Printout"), Ex. E to Def.'s 56(a)1 Stmt.; Plea Hr'g Tr., Ex. G. to Def.'s 56(a)1 Stmt. at 2.)

**II. Discussion**[5]

Defendant argues that summary judgment should be granted in this case because Plaintiff is judicially estopped from asserting an excessive force claim, because the record shows that his actions were objectively reasonable, and because he is entitled to qualified immunity.

**A. Judicial Estoppel**

Defendant asserts that Plaintiff should be judicially estopped from bringing an excessive force claim because Plaintiff pled guilty in a related criminal proceeding to interfering with an officer and, in colloquy, admitted that he behaved combatively towards Defendant. (Def.'s Mem. Supp. [Doc. # 86–1] at 19–20.)

---

[5] "Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

The purpose of judicial estoppel is to prevent a party from benefiting from inconsistent positions which would pervert the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). While not an exhaustive formula, judicial estoppel generally applies if: (1) a party's later position is clearly inconsistent with its earlier position; (2) the party's former position has been adopted by a court in an earlier proceeding; (3) the party asserting the two positions would gain an unfair advantage against the party seeking estoppel; and (4) allowing the inconsistent position is certain to impact judicial integrity. *De Rosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010); *see also New Hampshire*, 532 U.S. at 750–51.

### 1. Judicial Estoppel of Plaintiff's Excessive Force Claim

An individual's conviction for resisting arrest does not always estop a later claim for excessive force relating to that arrest. As the Second Circuit explained in *Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010),

> [A] prior conviction for resisting arrest may preclude a subsequent excessive force claim where facts actually determined in the criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the civil suit. However, because resistance to arrest does not give the officer license to use force without limit in response, there is no inherent conflict between a conviction for resisting arrest and a finding that the police officers used excessive force in effectuating that arrest.

*Id.* at 99 (internal citations and quotation marks omitted); *see also Sullivan v. Gagnier*, 225 F.3d 161 165–66 (2d Cir. 2000). In *Tracy*, the Second Circuit concluded that because the elements of the New York statute did not require the jury to evaluate the reasonableness of the officers' use of force, the plaintiff's claim for excessive force was not collaterally estopped as inherently factually conflicting with his conviction.

Here, the factual grounds for Plaintiff's guilty plea in the earlier criminal proceeding are not clearly inconsistent with his claim of excessive force. Under Connecticut law, an individual commits the offense of interfering with an officer when he "obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." Conn. Gen. Stat. § 53a-167a. Nothing in the terms of this statute precludes a finding that an individual both resisted arrest and also was the victim of excessive use of force related to the arrest because the statute does not require any particular level of obstruction, resistance, hindrance, or endangerment, and is silent as to the permitted response to such behavior by a peace officer. Thus, an individual could both present resistance to arrest, thereby violating the statute, and also be met with an unreasonable responsive use of force, giving rise to a constitutional claim. As in *Tracy*, the factual support for Plaintiff's guilty plea did not require an analysis of Defendant's reasonableness of the force used during his arrest, and in pleading guilty, Plaintiff merely admitted to directing his combative behavior toward the officers during his arrest, without making any statements regarding the force used against him. (*See* Plea Hr'g Tr. at 2.) Therefore Plaintiff's guilty plea does not foreclose the possibility that the amount of force Defendant used in relation to Plaintiff's combative behavior was unreasonable. *See Tracy*, 623 F.3d at 100; *see also Sullivan* 225 F.3d at 166.

Furthermore, it is not clear how judicial integrity would be impacted or whether Plaintiff would derive an unfair advantage if he is permitted to pursue his excessive force claim. "[A] party puts the integrity of the judicial process at risk not only when it knowingly lies but when it takes a position in the short term knowing that it may be on the verge of taking an inconsistent future action." *In re Adelphia Recovery Trust*, 634 F.3d 678, 696 (2d Cir. 2011). "[I]t is unfair advantage to the potentially prejudiced party's

adversary that is the touchstone of the doctrine." *Id.* at 698–99. Here, Plaintiff's guilty plea has not been shown to be inherently inconsistent with his excessive force claim, and there is nothing in the record to suggest that he pleaded guilty to resisting arrest with the intent to use that conviction to help him gain an advantage in the instant case. To the contrary, the conviction puts Plaintiff at a disadvantage because in determining whether an officer's use of force was excessive, jurors consider as one factor whether the suspect was resisting arrest. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, Plaintiff's conviction for resisting arrest does not preclude adjudication of his Fourth Amendment claims.

*2. Judicial Estoppel of Plaintiff's Denial of Resisting Arrest*

However, while Plaintiff is not estopped from asserting his excessive force claim, he is barred from alleging certain facts that would contradict the admissions he made during his guilty plea colloquy. In this Circuit, a plaintiff generally may not dispute the factual basis of a prior guilty plea in a related civil proceeding. *See Kuar v. Mawn*, No. 08–CV–4401, 2011 WL 838911, at *6 (E.D.N.Y. Mar. 4, 2011) ("[U]nder the doctrine of judicial estoppel, the Court will preclude plaintiff from taking factual positions in this case which are directly contrary to statements that he made in connection with his plea and that were adopted by the court which accepted his plea"); *Garcia v. Greco*, No. 05 CIV 9587, 2010 WL 446446, at *6 (S.D.N.Y. Feb. 9, 2010) (a plaintiff claiming excessive force who pled guilty to attempted assault of a police officer, after "having obtained the benefits of a favorable plea by making sworn admissions in open court . . . cannot now also claim to be the passive victim as depicted in his deposition"); *Perlleshi v. Cnty of Westchester*, No. 98 CIV 6927, 2000 WL 554294, at *5–6 (S.D.N.Y. Apr. 24, 2000) (a

plaintiff who pled guilty to resisting arrest was judicially estopped from contradicting the factual basis for the plea in a subsequent excessive force proceeding).

In his opposition, Plaintiff claims that he did not resist arrest before the officers tackled him, (Robert Methvin Aff. re False Statements in Officer Cerejo's Report, Ex. 1 to Pl.'s Rule 56(a)2 Stmt. ¶ 9), and that he never physically resisted the officers' efforts to restrain or handcuff him (*see* Methvin Dep. Tr. at 57, 80).  However, during his plea colloquy, Plaintiff agreed that he "directed his combative behavior both verbally and physically towards the police officers, especially when they attempted to arrest him for breach of peace." (Plea Hr'g Tr. at 2–3.)

The *De Rosa* factors favor judicial estoppel of Plaintiff's blanket assertion that he never resisted arrest at any time during the events of October 5, 2010.  Plaintiff's admission that he directed his combative behavior toward the officers when they tried to arrest him is clearly inconsistent with his current assertion that he did not resist arrest. The integrity of the judicial system will be compromised and Plaintiff will gain an unfair advantage if he can admit to resisting arrest, inducing a court to accept his guilty plea and consider it as mitigation in sentencing, and then deny that very act in another proceeding, in which an officer's conduct is considered in the context of whether the suspect was resisting arrest.  Plaintiff is thus estopped from claiming that he was at no time physically and verbally combative toward officers during his arrest.  However, Plaintiff's admissions in his plea colloquy are not necessarily inconsistent with his claims that he did not continue to resist arrest after he was brought to the ground.  Therefore, Defendant's summary judgment motion will be considered in the context of Plaintiff's claims that he was not resisting the attempts to handcuff him at the time that he was struck.

**B. Excessive Force**

"Police officer's application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397). Defendant moves for summary judgment on Plaintiff's excessive force claim on the ground that his use of force was objectively reasonable because it was necessary to overcome Plaintiff's resistance.[6] (Def.'s Mem. Supp. at 27, 30, 33; Cossette Report at 2.) An officer's use of force, however, is not objectively reasonable simply because a suspect was resisting arrest. *See Sullivan*, 255 F.3d at 165–66 ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit." (emphasis in original)). Whether an officer's conduct was objectively unreasonable requires balancing the plaintiff's Fourth Amendment rights against competing governmental interests and considering the circumstances from the perspective of a reasonable officer on the scene, including the severity of the underlying crime, the need for split–second decisions in tense situations, the risk to the officer and others, and whether the suspect resisted or fled from arrest. *Graham*, 490 U.S. at 396–97. "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder

---

[6] Defendant relies primarily on *Massaro v. Town of Trumbull*, 525 F. Supp. 2d 302, 305, 308 (D. Conn. 2007), *aff'd* 323 F. App'x 68 (2d Cir. 2009), in which Judge Bryant granted summary judgment on the ground of qualified immunity to the defendant police officers who arrested a man suspected of committing a violent crime, whom they knew to be a dangerous convicted felon, when the only evidence of excessive force was a hospital report indicating a bruised head. By contrast, here, Plaintiff's injuries are described as more severe than a bruise. (*See* Robert Methvin Dep. Tr. at 58; Cossette Report at 2.)

could conclude that the officer's conduct was objectively unreasonable." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2004).

At this stage, whether Defendant's actions were objectively reasonable cannot be determined because the basic facts of the relevant altercation are in dispute. *Mills v. Fenger*, 216 F. App'x 7, 9 (2d Cir. 2006) ("[F]actual disputes as to the degree of force actually employed and its reasonableness . . . preclude the grant of summary judgment.") (internal citations and quotation marks omitted). Defendant admits to delivering one knee strike to Plaintiff's body while Plaintiff was actively resisting arrest and denies striking Plaintiff in the head. (*See* Cossette Report at 2.) However, Plaintiff sustained injuries only to his head, neck, and face, and he denies that his face ever struck the ground when the officers tackled him. (*See* Robert Methvin Dep. Tr. at 61, 111.) Plaintiff's descriptions of his injuries are generally consistent with the photos taken after the incident, and with his medical records. (*See* Injury Photos, Midstate Medical Center Records.) Plaintiff also proffers an expert report concluding that Defendant struck Plaintiff in the face, which reasonable jurors could conclude constituted excessive force (*see* Siena Report), particularly if Plaintiff's claim to have ceased his resistance at the time he was struck (*see* Robert Methvin Dep. Tr. at 80), is validated.

An officer may certainly use force or the threat of force to effect an arrest, *Graham*, 490 U.S. at 396, and a single strike to the torso will not always constitute unreasonable force. *See Husbands ex rel. Forde v. N.Y.C.*, 335 F. App'x 124, 126 (2d Cir. 2009) (no excessive force when an officer punched a dangerous crime suspect who resisted arrest once in the torso, despite unfounded allegations than an unidentified officer not named in the suit kicked the man's head). However, a reasonable jury could conclude that a knee strike to the head of an unarmed man lying face down while in the

process of being handcuffed constitutes an unnecessary and unreasonable use of force, especially in light of the fact that two officers were making the arrest. *See Amnesty America*, 361 F.3d at 124 ("Because a reasonable jury could also find that the officers gratuitously inflicted pain in a manner that was not a reasonable response to the circumstances, however, the determination as to the objective reasonableness of the force used must be made by a jury following a trial"). Therefore, because there are outstanding factual disputes regarding the timing and nature of the force used, and Plaintiff's conduct at the time, Defendant's motion for summary judgment on this ground is denied.

### D. Qualified Immunity

Finally, Defendant moves for summary judgment on the basis that he is entitled to qualified immunity. (Def.'s Mem. Supp. at 36.) Qualified immunity shields government officials from civil suit when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Thus, qualified immunity protects a defendant if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was objectively reasonable for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo,* 546 F.3d 95, 102 (2d Cir. 2008) (internal citations and quotation marks omitted). Plaintiff has alleged a violation of his clearly established Fourth Amendment right to be free from excessive force by claiming that Defendant kneed him in the head hard enough to draw blood while he was lying face down and two officers were placing him in handcuffs. *See Green v. Montgomery*, 219 F.3d 52, 59 (2d Cir. 2000) ("It is beyond dispute that the right to be free from excessive force has long been clearly established"); *see also O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir. 1998) (noting that repeatedly

striking the head of a person unable to defend himself was excessive force). Thus, Defendant is entitled to qualified immunity only if it was objectively reasonable to believe that his use of force during Plaintiff's arrest did not violate Plaintiff's right to be free from excessive force.

Defendant's belief is objectively reasonable if "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Zalaski v. City of Hartford,* 723 F.3d 382, 389 (2d Cir. 2013) (internal citations and quotation marks omitted). However, such a determination is not possible where genuine issues of material fact relating to the nature of the force used and the resistance mounted remain outstanding. *See Green*, 219 F.3d at 59 (noting that a genuine issue of material fact prevented a determination of whether reasonable officers could disagree on the legality of the defendant's actions). As discussed above, there are outstanding factual disputes in this case regarding the force, timing, and location of Defendant's blows in relation to Plaintiff's conduct. Viewing the facts in the light most favorable to the non-movant, it is hardly clear that officers of reasonable competence would think that kneeing the head of an unarmed and intoxicated man lying face down on the ground while being handcuffed by two police officers was a reasonable use of force. *See Thomas v. Holly*, No. 12–2076, 2013 WL 3722350, at *10 (4th Cir. May 15, 2013) (holding that an officer who forcefully hit an unarmed suspect several times in the face with his knee while the suspect was being handcuffed by other officers was not entitled to qualified immunity); *see also Aranda v. McMinnville*, No. 3:12–CV–00170–SI, 2013 WL 1793942, at *1, *8 (D. Or. Apr. 29, 2013) (holding that officers who repeatedly hit a suspect armed with a pocket knife in the face with their fists and knees were not entitled to qualified immunity). Therefore, because there are still material facts related to the precise nature of Plaintiff's encounter

with Defendant in dispute, Defendant's motion for summary judgment on qualified immunity grounds is denied. *See Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) ("Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded.").

## VI. Conclusion

For the reasons set forth above, Defendant's Motion [Doc. # 86] for Summary Judgment is DENIED, but Plaintiff is estopped from contending that he never resisted arrest at any point during the October 5, 2010 incident.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 22nd day of October, 2013.

14